# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF FLORIDA

Case No.        -Civ-

| | |
|---|---|
| GARRETT HEIM, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>IDI, INC., PETER W.H. TAN, DEREK DUBNER, and JACKY WANG,<br><br>Defendants. | **JURY TRIAL DEMANDED** |

# CLASS ACTION COMPLAINT

Plaintiff Garrett Heim ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his complaint against defendants, alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding IDI, Inc. ("IDI" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet.

# NATURE OF THE ACTION

1. This is a federal securities class action on behalf of a class consisting of all persons other than defendants who purchased IDI securities between April 30, 2015 and July 21,

2015, inclusive (the "Class Period"), seeking to recover compensable damages caused by defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 against the Company and certain of its top officials.

2. IDI through its subsidiaries, operates as an information solutions provider focused on the data-fusion market. It operates in two segments, Data Fusion and Advertising Services. It provides data solutions and services to the accounts receivable management (ARM) industry for location and identity verification, legislative compliance, and debt recovery, as well as focuses on the risk management market, including expansion into Fair Credit Reporting Act (FCRA) regulated data, non-regulated data, and marketing and data analytics.

3. Throughout the Class Period, Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, prospects and performance. Specifically, during the Class Period, Defendants made false and/or misleading statements and/or failed to disclose that: (1) Chairman Michael Brauser was named as a defendant in multiple civil fraud litigation; (2) Chairman Michael Brauser was co-owner of a company that filed for bankruptcy and was sued as an adversary in that bankruptcy proceeding; and (3) IDI's Transunion lawsuit could render IDI's stock worthless.

4. On July 21, 2015, *SeekingAlpha.com* published an article, which asserts among other things that: (1) Chairman Michael Brauser's biography omits his being named as a defendants in multiple civil fraud litigation and sued in a bankruptcy proceeding; and (2) IDI's Transunion lawsuit could render IDI's stock worthless.

5. On this news, shares of the Company fell $5.26 per share or over 46% to close at $6.16 per share on July 21, 2015, damaging investors.

6. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

7. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).

8. This Court has jurisdiction over the subject matter of this action pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1331.

9. Venue is proper in this District pursuant to §27 of the Exchange Act, 15 U.S.C. §78aa and 28 U.S.C. §1391(b) as IDI conducts business in this District.

10. In connection with the acts, conduct and other wrongs alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

11. Plaintiff Garrett Heim, as set forth in the attached Certification, purchased IDI securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the corrective disclosures.

12. Defendant IDI is headquartered at 2650 North Military Trail, Suite 300, Boca Raton, Florida 33431. At all relevant times herein, its common stock was listed on the NYSE under the ticker "IDI."

13. Defendant Peter W. H. Tan ("Tan") has served as the Company's Co-CEO

throughout the Class Period.

14.  Defendant Derek Dubner ("Dubner") has served as the Company's Co-CEO throughout the Class Period.

15.  Defendant Jacky Wang has served as the Company's CFO from the beginning of the Class Period until being replaced by Aaron Solomon on June 30, 2015.

16.  Michael Brauser ("M. Brauser") was elected as a director of the Company during its Annual Meeting of Stockholders for 2015 held on June 2, 2015. On June 16, 2015, M. Brauser became the Executive Chairman of the Company.

17.  Defendants Tan, Dubner, and Wang are sometimes referred to herein as the "Individual Defendants."

18.  Defendants IDI, Tan, Dubner, and Wang are sometimes referred to herein as the "Defendants."

19.  Each of the Individual Defendants:

    (a)  directly participated in the management of the Company;

    (b)  was directly involved in the day-to-day operations of the Company at the highest levels;

    (c)  was privy to confidential proprietary information concerning the Company and its business and operations;

    (d)  was involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

    (e)  was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and

    (f)  approved or ratified these statements in violation of the federal securities

laws.

20. As officers, directors, and controlling persons of a publicly-held company whose securities are and were registered with the SEC pursuant to the Exchange Act, and were traded on NYSE and governed by the provisions of the federal securities laws, the Individual Defendants each had a duty to disseminate accurate and truthful information promptly with respect to the Company's business prospects and operations, and to correct any previously-issued statements that had become materially misleading or untrue to allow the market price of the Company's publicly-traded stock to reflect truthful and accurate information.

21. IDI is liable for the acts of the Individual Defendants and its employees under the doctrine of respondeat superior and common law principles of agency as all of the wrongful acts complained of herein were carried out within the scope of their employment with authorization.

22. The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to IDI under respondeat superior and agency principles.

## SUBSTANTIVE ALLEGATIONS

### Materially False and Misleading Statements Issued During the Class Period

23. The Class Period starts on April 30, 2015, when the Company filed a definitive proxy statement on Schedule 14A with the SEC (the "Proxy Statement") in connection with its annual shareholders meeting to elect members of its Board of Directors. The Proxy Statement included biographical information about M. Brauser as a director nominee, stating in part:

> **Michael H. Brauser**, 58, has been the manager of, and an investor with, Marlin Capital Partners, LLC ("Marlin Capital"), a private investment company, since 2003. From 1999 to 2002, he served as president and chief executive officer of Naviant, Inc. (eDirect, Inc.), an internet marketing company. He also was a founder of Seisint, Inc. (eData.com, Inc.). Mr. Brauser served as co-chairman of the board of directors of InterCLICK (now a part of Yahoo Inc. (NASDAQ: YHOO)), from August 2007 to December 2011. Mr. Brauser also served as co-

chairman of the board of directors of Chromodex, Inc., an innovative natural products company, from October 2011 to February 2015. The Nominating Committee believes that Mr. Brauser's experience as a director on various public company boards of directors and as a manager of an investment company bring extensive business and management expertise to the Board. Michael Brauser is the father of Daniel Brauser.

24. The Proxy Statement was materially misleading because the Company failed to disclose that Chairman M. Brauser: (1) was named as a defendant in various civil fraud litigation; (2) was co-owner of a telecommunications firm The Telephone Co. of Central Florida ("Telephone Co."), which filed for bankruptcy; and (3) was sued in an adversary proceeding related to the Telephone Co. bankruptcy.

25. On May 20, 2015, the Company filed a Form 10-Q with the SEC for the quarterly period ended March 31, 2015 (the "2015 1Q 10-Q"). The 2015 10-Q was signed by Defendant Wang, which stated the following with regards to the Company's legal proceedings:

ITEM 1. LEGAL PROCEEDINGS.

We may be involved in litigation from time to time in the ordinary course of business. We do not believe that the ultimate resolution of these matters will have a material adverse effect on its business, financial condition or results of operations. However, the results of these matters cannot be predicted with certainty and we cannot assure you that the ultimate resolution of any legal or administrative proceeding or dispute will not have a material adverse effect on our business, financial condition and results of operations.

***On October 27, 2014, TransUnion Risk and Alternative Data Solutions, Inc. ("TRADS") filed a Complaint for Declaratory Judgment against Interactive Data, among other parties, in the U.S. Bankruptcy Court, Southern District of Florida, regarding a dispute over ownership of the Purchased IP. As of the date of this report, this case is ongoing.***

On October 23, 2014, TRADS filed a Complaint and Motion for Temporary Injunction, in the Fifteenth Judicial Circuit Court in and for Palm Beach County, Florida, against James Reilly, President and Chief Operating Officer of TBO and Interactive Data, seeking relief for alleged violation of a noncompetition agreement. An adverse ruling could have an immediate near-term impact on TBO's and/or Interactive Data's financial position, results of operations, and liquidity. As of the date of this report, this case is ongoing.

> On November 26, 2014, TRADS filed a Complaint and Motion for Preliminary Injunction, in the United States District Court, Southern District of Florida, against Daniel MacLachlan, Chief Financial Officer and Treasurer of TBO, seeking relief for alleged violation of a noncompetition agreement. An adverse ruling could have an immediate near-term impact on TBO's financial position, results of operations, and liquidity. As of the date of this report, Mr. MacLachlan is not an employee of the Company, and this case is ongoing.
>
> As of April 15, 2015, we were involved in a dispute with a landlord of advertising location. If the consequence of the dispute is adverse to us, it may lose the advertising place. Management believes that this will not adversely impact its revenue in future, as we have had a replacement to this advertising location.

(Emphasis added).

26. The disclosure of the Company's legal proceedings in its 2015 1Q 10-Q was incomplete and misleading because it failed to disclose the risk that an adverse ruling in the action filed by TRADS on October 27, 2014 (the "TRADS IP Lawsuit") could have an immediate near-term impact on the Company's financial position, results of operations, and liquidity.

## The Truth Emerges

27. On July 21, 2015, *SeekingAlpha.com* published an article entitled "IDI: Strong Sell on Fraud Lawsuits, Bankruptcy and Technology Failure, -92.4% Downside," which asserts among other things that: (1) Chairman M. Brauser's biography omits his being named as a defendants in multiple civil fraud litigation and sued in a bankruptcy proceeding; and (2) IDI's Transunion lawsuit could render IDI's stock worthless (the "SA Article").

28. Specifically, the SA Article revealed that:

- Chairman M. Brauser was sued by Equifax, Inc. for fraud and breach of contract as the President, Chief Executive Officer and Director of Naviant;

- Chairman M. Brauser was sued by Softbank Capital Partners

7

  ("Softbank"), a Naviant shareholder, for breach of contract and indemnification for M. Brauser's failure to pay Softbank his share of the millions of dollars of attorney's fees and costs incurred by Softbank in its capacity as the shareholders representative of Naviant;

- Chairman M. Brauser was sued for fraud and misrepresentations, including violations of federal securities laws, in connection with the purported purchase of 100% of the shares of Biozone Pharmaceuticals, Inc.;

- Chairman M. Brauser was sued for fraud and breach of fiduciary duty as a Director of The Tube Media Corp.;

- Chairman M. Brauser was sued for violations of federal securities laws as a shareholder of Sunair Services Corporation; and

- Chairman M. Brauser was co-owner of Telephone Co., which filed for bankruptcy and was sued in an adversary proceeding related to the bankruptcy.

  29. The SA Article also revealed that an adverse ruling in the TRADS IP Lawsuit would render the Company's stock worthless, which states in part:

> **TransUnion Lawsuit Renders IDI a "Zero" Immediately Anyway**
>
> What IDI's retail shareholders need to understand is that this lawsuit is devastating to IDI's desperate technology claims which, in part, support IDI's temporarily inflated stock price. I think this lawsuit between IDI and TransUnion is one of the most clear cut lawsuits I've ever seen and I believe IDI will obviously lose. The TLO IP in this lawsuit took TLO >4 years and $100m+ to develop with a huge team, when IDI loses this lawsuit and any claim to the IP there is simply no way this tiny fraud ridden shell company has any hope of recreating it. Therefore once IDI loses this lawsuit, the only "technology" left will be some tiny debt collections company that has been struggling since 2001 and

apparently spends $0 on R&D. Furthermore, now that TransUnion is embroiled in IDI's technology and business I think if IDI makes any technology claims in the future: Transunion will respond with swift and endless litigation claims claiming any new IDI products are based on "prior art" and Transunion's IP.

Furthermore, Brauser's Federal Fraud litigation with Equifax and egregious lawsuit with Transunion clearly renders both of those companies "off limits" to IDI. In the data industry I see no way any company can be successful if they are "black listed" from having any dealings with those two juggernauts. Let alone the fact that Transunion seems intent on destroying IDI and if you read the court documents I believe you will see, as I did, the TransUnion/TLO team feels offended personally by all of this.

All the documents from the Transunion litigation against Brauer and IDI are free and publicly available here and I especially recommend reading the complaint and any transcripts. In the interest of time I will not go into detail and recommend you read up on this yourself. I will give you my quick-summary read on it though, which is once Transunion tried to enforce their noncompete agreements against IDI employees alleged to have violated them, Brauser allegedly tried to extort Transunion over claimed license fees due based on IP which TransUnion already purchased in the TLO bankruptcy auction.

The lawsuit centers around "BOLT code" which is code written in BOLT that scans across data sets. This is a common and any multiple data base tool like lexis Nexis or others have something like this. The other contested IP is the "BParser" code, which converts the BOLT code to C++ (universal programming language).

This is one of the most direct and obvious lawsuits I've ever seen because, comically, both of these pieces of IP appears expressly explained and spelled out to me in the 363 asset sale documents Transunion and TLO participated in. I think there is ~100% chance that IDI loses this resoundingly. For example, check out the express and direct description of the assets sold in bankruptcy as cited in doc 61 filed 3/18/15

> "[T]o the extent that Ole Poulsen holds or asserts any interests of any kind in the BParser code converter software used or useful by the Debtor in the conduct of the Business (the "BParser Code") or any other Business Assets, *such BParser Code and other Business Asset shall be deemed an Acquired Asset and may be sold to the Buyer free and clear of all such interests….*"

Furthermore, Brauser and IDI CEO Derek Dubner were intimately involved in the bankruptcy auction as Transunion states they served the sales order on both Brauser and Derek Dubner, as well as Interactive Data. While after the close of the sale, Poulsen and Brauser both had extensive ongoing involvement with the case concerning division of sale proceeds. Lastly, all of this IP appears to have

> been created using TLO hardware, stored on TLO's servers and used 40+ TLO programmers. Even Poulsen was a full time employee of TLO at the time working on the IP and was paid by TLO and then by Transunion for this, and his home was even paid for by TLO, so any claims IP developed at home are his seems worthless as well.
>
> None of this even matters much anyway, as TransUnion's TLOxp is a dominant competing product that is cheaper and with more functionality than anything IDI can offer.
>
> If you call TLO, their sales people will be happy to explain all the reasons they are superior to anyone else, and even if they were in fact inferior (they aren't) Transunion's enormous global sales force would steamroll anyone stupid enough to confront them. If TLO wasn't superior then why would Brauser try to buy them before and get sucked into this impossible lawsuit over the IP?
>
> TLO and Transunion are far cheaper too as they offer in depth reporting tools with "all you can eat" pricing for <$175 a month. For small, low-volume customers who prefer transactional pricing, TLO's superior service costs ~$0.30 per search, making IDI's quoted average price of $0.375 a full +25% more expensive than TLO. This makes IDI inc's desperate product offerings not just hopelessly behind the curve but simultaneously too expensive to be competitive. I don't see how Transunion doesn't just eat them alive over time.

30.     On this news, shares of the Company fell $5.26 per share or over 46% to close at $6.16 per share on July 21, 2015, damaging investors.

31.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

32.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased IDI during the Class Period (the "Class"); and were damaged thereby.  Excluded from the Class are defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any

entity in which defendants have or had a controlling interest.

33. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, IDI securities were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by IDI or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

34. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

35. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

36. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by defendants' acts as alleged herein;

- whether defendants failed to disclose material facts to the investing public which rendered the Company's affirmative misstatements misleading;

- whether the Individual Defendants caused the Company to issue misleading statements during the Class Period;

- whether defendants acted knowingly or recklessly in issuing misleading statements;

- whether the prices of the Company's securities during the Class Period were artificially inflated because of the defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

37. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

38. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- defendants failed to disclose material facts during the Class Period;

- the omissions were material;

- the Company's stock was traded in efficient markets;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NYSE, and was covered by multiple analysts;

- the omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased the Company's stock between the time the defendants failed to disclose material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

39. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

40. Alternatively, Plaintiffs and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### (Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder Against All Defendants)

41. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

42. This Count is asserted against defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

43. During the Class Period, defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of Securities.  Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of IDI securities; and (iii) cause Plaintiff and other

members of the Class to purchase IDI securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

44.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the defendants participated directly or indirectly in the preparation and/or issuance of offering documents for the IPO described above. Such reports, filings, releases and statements were materially misleading in that they failed to disclose material adverse information about the Company.

45.     By virtue of their positions at the Company, defendants had actual knowledge of the material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially misleading nature of the statements made, although such facts were readily available to defendants. Said acts and omissions of defendants were committed willfully or with reckless disregard for the truth. In addition, each defendant knew or recklessly disregarded that material facts were being omitted as described above.

46.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of IDI. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to IDI's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned misleading reports, releases and public statements, the market price of IDI

securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning IDI's business and financial condition which were concealed by defendants, Plaintiff and the other members of the Class purchased IDI securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the Securities and/or upon statements disseminated by defendants, and were damaged thereby.

47. By reason of the conduct alleged herein, defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

48. As a direct and proximate result of defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's Securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

### (Violations of Section 20(a) of the Exchange Act
### Against The Individual Defendants)

49. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

50. During the Class Period, the Individual Defendants participated in the operation and management of IDI, and conducted and participated, directly and indirectly, in the conduct of IDI's business affairs. Because of their senior positions, they knew the adverse non-public information about IDI's omissions.

51. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to IDI's

15

business, and to correct promptly any public statements issued by IDI which had become materially misleading.

52. Each of the Individual Defendants, acted as a controlling person of IDI. By reason of their senior management positions and/or being directors of IDI, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, IDI to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of IDI and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

53. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by IDI.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against defendants as follows:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B. Requiring defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C. Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D. Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: July 22, 2015	Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

By: /s/ Laurence Rosen
Laurence Rosen, Esq.
Fla. Bar No. 0182877
Email: lrosen@rosenlegal.com
275 Madison Avenue, 34th Floor
New York, NY  10116
Phone: (212) 686-1060
Fax: (212) 202-3827

Counsel for Plaintiff